UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| RYAN H. WHIMPEY ) | Case No. 24-12809-KHT |
| SSN: XXX-XX-2737 ) | Chapter 7 |
| ) | |
| *Debtor.* ) | Adv. Proc. No. 24- |
| ) | |
| _____ ) | |
| ) | |
| STEVEN COHEN, ERAN COHEN, ) | |
| MICHAEL LITWIN, THE ESTATE OF ) | |
| JEFFREY KRAY, MICHELE ) | |
| CALZARETTA, DEAN KERN, ) | |
| MICHAEL LELAH, JOSHUA LELAH and ) | |
| JONATHAN LELAH, ) | |
| ) | |
|    Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| RYAN H. WHIMPEY, individually and ) | |
| d/b/a ARI DESIGNS, LLC, and d/b/a ) | |
| SQUARE HAUS, LLC, ) | |
| ) | |
|    Defendant. ) | |

**COMPLAINT OBJECTING TO DISCHARGE OF DEBTS PURSUANT
TO 11 U.S.C. § 523**

    The above-captioned Plaintiffs, by and through their undersigned counsel of record, Lance J. Goff of GOFF & GOFF, LLC, state their Complaint against defendant Ryan H. Whimpey, individually, and d/b/a ARI Designs, LLC, and/or Square Haus, LLC (the "*Defendant*"):

**I.**

**PARTIES, JURISDICTION AND VENUE**

1. On May 22, 2024, the Defendant, individually, and doing business as ARI Designs, LLC, filed for bankruptcy under Chapter 13 of the Bankruptcy Code.

2. On August 13, 2024, the Defendant converted his case from Chapter 13 to Chapter 7 pursuant to 11 U.S.C. § 1307.

1

3. Defendant resides at 209 Kalamath St., #29, Denver, CO 80223.

4. Plaintiffs are individuals and citizens of the United States who reside in the States of Illinois and Florida.

5. This court has jurisdiction in this pursuant to 28 U.S.C. § 1334 and the automatic referral of bankruptcy matters for the United States District Court for the District of Colorado under D.C. COLO. LCivR 84.1(A).

6. Venue is proper under 28 U.S.C. § 1408 or 1409.

7. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

8. This adversary proceeding is commenced pursuant to Fed. R. Bankr. P. 7001(4) (6) and (9).

9. The Plaintiffs consent to entry of final orders and judgment by this Court.

## II.

## **GENERAL ALLEGATIONS**

10. On July 13, 2005, Defendant organized and began operating a Nevada limited liability company, Square Haus, LLC, whose status is currently in default.

11. On March 6, 2018, Defendant organized and began operating a Colorado limited liability company, ARI Designs, LLC, which is currently in good standing.

12. Defendant solicited all of the loans discussed below either through Square Haus, LLC, or ARI Designs, LLC, both of which he owned and controlled.

13. The Plaintiffs, collectively, hold almost $1,000,000 in defaulted promissory notes (the *"Defaulted Notes"*) that were signed and delivered to them by the Defendant.

14. To obtain funds from the Plaintiffs, the Defendant represented that loan proceeds would be utilized for specific projects, and that deeds of trust would be recorded against a specific property he owned. Each loan would be repaid, together with accrued interest, on the Note's maturity date or on the date the property sold, whichever occurred first.

15. Unbeknownst to the Plaintiffs, and contrary to the written representations in the loan documents, the Defendant did not record deeds of trust against each property for which he solicited and received funds, nor did he use the funds received to perform work on the property for which the loans were solicited. Rather, Defendant operated his business as a Ponzi Scheme and used the funds provided by the Plaintiffs to benefit himself, to fund other, unrelated projects, and/or to repay preferred creditors.

16. Defendant utilized five properties which he falsely offered as "collateral" in his scheme to defraud the Plaintiffs: 4118 W. 1st Avenue, Denver, CO 80219 ("*1st Avenue*"); 3439 N. Williams Street, Denver, CO 80205 ("*Williams Street*"); 314 Galapago Street, Denver, CO 80223 *("Galapago Street")*; 209 Kalamath Street, #29, Denver, CO 80223 ("*Kalamath Street*"); and 1269 S. Ulster Street, Denver, Colorado 80231 ("*S Ulster Street*").

17. With respect to S. Ulster Street, the Defendant solicited and received funds from several of the Plaintiffs, who believed they were providing secured financing for its remodel/restoration. The Plaintiffs have since learned that the Defendant has never owned S. Ulster Street.

A. **1st Avenue**

18. On September 14, 2022, Defendant, through Square Haus, purchased the 1st Avenue property for $202,000.

19. On that same day, Defendant, through ARI Designs, borrowed $75,000 by executing promissory notes in favor of the following individuals: Joshua Lelah ($25,000) Michael Lelah ($25,000) Michael Litwin ($25,000) to be used for the remodeling/rehabilitation of the 1st Avenue property.

20. Each of the foregoing Notes contains language that "This Note is secured by a deed of trust of even date herewith…."

21. Contrary to the representation contained in each Note that it would be secured by a Deed of Trust, the Defendant never executed and recorded deeds of trust, and all the Plaintiffs described in Para. 19 above, remained unwitting unsecured creditors.

22. Each Note also contains a due on sale provision and a maturity date of September 13, 2024, whichever occurs first.

23. The 1st Avenue Notes were not repaid on the maturity date and are in default.

24. On September 28, 2022, after the 1st Avenue Notes were in default, the Defendant borrowed $279,200 from a third-party lender, which obligation was secured by a deed of trust against 1st Avenue. Defendant did not use any portion of the loan proceeds to repay the 1st Avenue Note Holders.

B. **Williams Street**

25. On September 25, 2019, Defendant, through ARI Designs, purchased the Williams Street property for $355,000.

26. On December 30, 2019, Defendant, through ARI Designs, borrowed $235,000 by executing promissory notes in favor of the following individuals: Eran Cohen ($25,000)

3

Steven Cohen ($25,000) Jeff Kray ($35,000) Joshua Lelah ($25,000) Michael Lelah ($100,000) and Michael Litwin ($25,000) to be used for the remodeling/rehabilitation of the Williams Street property.

27. William Street Note Holder Jeffrey Kray died on February 14, 2021. His wife, Plaintiff Karen Kray, is the executrix of his Estate.

28. Each of the foregoing Notes contains language that "This Note is secured by a deed of trust of even date herewith…"

29. Contrary to the representation contained in each Note that it would be secured by a Deed of Trust, the Defendant never executed and recorded deeds of trust, and all the Plaintiffs described in Para. 26 above, remained unwitting unsecured creditors.

30. Each Note also contains a due on sale provision and a maturity date of December 30, 2021, whichever occurs first.

31. On February 1, 2021, without the Williams Street Note Holders knowledge or consent, Defendant caused or allowed a mortgage of $548,414 to be recorded against Williams Street, and no part of the loan proceeds were used to repay them.

32. On October 20, 2021, Defendant, through ARI Designs, borrowed another $100,000 by executing promissory notes in favor of the following individuals: Steven Cohen ($25,000) Josh Lelah ($25,000) and Michael Lelah ($50,000).

33. Each of the foregoing Notes contains language that "This Note is secured by a deed of trust of even date herewith…"

34. Contrary to the representation contained in each Note that it would be secured by a Deed of Trust, the Defendant never executed and recorded deeds of trust, and all the Plaintiffs described in Para. 32 above, remained unwitting unsecured creditors.

35. Each Note described in Para. 32 above, also contains a due on sale provision and a maturity date of October 19, 2023, whichever occurs first.

36. On July 1, 2023, Defendant, through ARI Designs, borrowed another $100,000 by executing promissory notes in favor of Steven Cohen ($35,000) Joshua Lelah ($25,000) and Michael Lelah ($40,000).

37. Each of the foregoing Notes contains language that "This Note is secured by a deed of trust of even date herewith…"

38. Contrary to the representation contained in each Note that it would be secured by a Deed of Trust, the Defendant never executed and recorded deeds of trust, and all the Plaintiffs described in Para. 36 above, remained unwitting unsecured creditors.

39. Each Note described in Para. 36 above, also contains a due on sale provision and a maturity date of June 30, 2024, whichever occurs first.

40. On April 2, 2024, Defendant, through ARI Designs, sold Williams Street for $1,200,000 without paying any of the Notes described in Paras. 26, 32, and 36 above.

41. Upon the sale of Williams Street, Defendant received approximately $650,000 in proceeds which were not paid to the Williams Note Holders, and which Defendant has failed and refused to account for.

42. Defendant concealed the sale of Williams Street from the Note Holders and lied to them about the status of the property. For example, on April 8, 2024, six days *after* the property was sold, Defendant sent the Note Holders an email which stated that Williams Street had not yet passed its final building inspection, but that he anticipated a closing would be scheduled soon.

43. Defendant, through ARI Designs, after encumbering Williams Street without the Note Holders consent, sold it without paying them, and misappropriated or misdirected the sale proceeds.

C.  **Galapago Street**

44. On November 23, 2020, Defendant, through ARI Designs, purchased the Galapago Street property for $425,500.

45. On November 13, 2020, Defendant, through ARI Designs, borrowed $175,000 by executing promissory notes in favor of the following individuals: Michele Calzaretta ($25,000) Steven Cohen ($35,000) Dean Kern ($40,000) Jonathan Lelah ($25,000) Joshua Lelah ($25,000) and Michael Litwin ($25,000) to be used for the remodeling/rehabilitation of the Galapago Street Property.

46. Each of the foregoing Notes contains language that "This Note is secured by a deed of trust of even date herewith…"

47. Contrary to the representation contained in each Note that it would be secured by a Deed of Trust, the Defendant never executed and recorded deeds of trust, and all the Plaintiffs described in Para. 44 above, remained unwitting unsecured creditors.

48. Each Note described in Para. 45 above, also contains a due on sale provision and a maturity date of November 13, 2022, whichever occurs first.

49. On June 17, 2022, without the Galapago Note Holders' knowledge or consent, Defendant, through ARI Designs, caused a deed of trust to be recorded against the Galapago Property in the amount of $500,000. No part of the loan proceeds was used to repay the Galapago Note Holders.

5

50. Defendant, through ARI Designs, defaulted on the Galapago Street Notes, which remain unpaid.

**D.**   **Kalamath Street**

51. On June 21, 2019, Defendant, through ARI Designs, purchased the Kalamath Street property for $320,000.

52. On March 1, 2022, Defendant, through ARI Designs, borrowed $225,000 by executing promissory notes in favor of the following individuals: Joshua Lelah ($50,000) Michael Lelah ($150,000) and Michael Litwin ($25,000) to be used to remodel the Kalamath Street property.

53. To induce the Kalamath Street Note Holders to lend, Defendant represented that he needed a short term "bridge" loan while he arranged conventional financing.

54. Each of the foregoing Notes contains language that "This Note is secured by a deed of trust of even date herewith…"

55. Contrary to the representation contained in each Note that it would be secured by a Deed of Trust, the Defendant never executed and recorded deeds of trust, and all the Plaintiffs described in Para. 52 above, remained unwitting unsecured creditors.

56. Each Note described in Para. 52 above, also contains a due on sale provision and a maturity date of June 30, 2022, whichever occurs first.

57. On August 29, 2022, when the Kalamath Street Notes were in default, and without the Note Holders knowledge or consent, Defendant caused or allowed a deed of trust in favor of third party Nexera Holding, LLC to be recorded against Kalamath Street in the amount of $493,600.

58. Defendant did not use any of the Nexera Holding loan proceeds to repay the Note Holders, either in whole or in part.

59. On April 1, 2024, Defendant, without the Kalamath Street Note Holders' knowledge or consent, caused or allowed a deed of trust in favor of third party Nancy D. Cox to be recorded against Kalamath Street in the amount of $270,000.

60. Defendant did not use any of the Cox loan proceeds to repay the Note Holders, either in whole or in part.

61. Defendant, through ARI Designs, defaulted on the Kalamath Street Notes, which remain unpaid.

E.   S. Ulster Street

62. The Defendant never owned the S. Ulster Street property.

63. On December 1, 2023, Defendant, through ARI Designs, borrowed $75,000 by executing promissory notes in favor of the following individuals: Joshua Lelah ($25,000) and Michael Lelah ($50,000) to be used for the remodeling/rehabilitation of the Ulster Street property.

64. Each of the Notes described in Para. 63, above contains a due on sale provision and a maturity date of June 2, 2024, whichever occurs first.

65. Contrary to the representation contained in each Note that it would be secured by a Deed of Trust, the Defendant never executed and recorded deeds of trust, and all the Plaintiffs described in Para. 63 above, remained unwitting unsecured creditors.

66. In July of 2024, after the S. Ulster Street Notes had matured, Defendant sold S. Ulster Street in a transaction which benefited the Defendant but not the Note Holders.

67. The defaulted S. Ulster Street Notes remain unpaid.

### III.

### FIRST CLAIM FOR RELIEF
(1st Avenue – False Pretenses, False Representation or Actual Fraud - 11 U.S.C. § 523(a)(2)(A))

68. Plaintiffs reincorporate Paras. 1-67 as though fully set forth herein.

69. The Notes described in Para. 19 above are valid debts.

70. Defendant, in soliciting loans from the Note Holders, and in drafting and executing the Notes, made false representations to the Note Holders that their loans would be secured by deeds of trust against the 1st Avenue property.

71. Defendant intended that the Note Holders would rely on his false representations that their loans would be secured against the 1st Avenue property.

72. The Note Holders relied on the Defendant's false representations in agreeing to make the loans on the terms described in the Notes.

73. The Note Holders' reliance on Defendant's false representations was reasonable.

74. Defendant, by falsely asserting that: (a) the funds loaned by the Note Holders would be used to remodel/rehabilitate the 1st Avenue Property and/or by false asserting that (b) their Notes would be secured by deeds of trust against the 1st Avenue property, intentionally

7

engaged in a scheme to deprive or cheat the Plaintiffs of their property or a legal right, and accordingly committed actual fraud.

75. Defendant's false representations and/or commission of actual fraud against the 1st Avenue Note Holders have caused them to sustain damages in an amount to be proven at trial.

## IV.

## SECOND CLAIM FOR RELIEF
(Williams Street – False Pretenses, False Representation or Actual Fraud - 11 U.S.C. § 523(a)(2)(A))

76. Plaintiffs re-allege paragraphs 1 - 67 as though fully set forth herein.

77. The Notes described in Para. 26, 32, and 36, above are valid debts.

78. Defendant, in soliciting loans from the Williams Street Note Holders, and in drafting and executing the Notes, made false representations to them that their loans would be secured by deeds of trust against the Williams Street property.

79. Defendant intended that the Williams Street Note Holders would rely on his false representations that their loans would be secured against the Williams Street property.

80. The Williams Street Note Holders relied on the Defendant's false representations in agreeing to make the loans on the terms described in the Notes.

81. The Williams Streeet Note Holders' reliance on Defendant's false representations was reasonable.

82. Defendant, by falsely asserting that: (a) the funds loaned by the Williams Street Note Holders would be used to remodel/rehabilitate Williams Street and/or by false asserting that (b) their Notes would be secured by deeds of trust against Williams Street; and/or (c) that the Note Holders would be repaid when Williams Street was sold, intentionally engaged in a scheme to deprive or cheat the Plaintiffs of their property or a legal right, and accordingly committed actual fraud.

83. Defendant's false representations and/or commission of actual fraud against the Williams Street Note Holders have caused them to sustain damages in an amount to be proven at trial.

**V.**

**THIRD CLAIM FOR RELIEF**

(Galapago Street – False Pretenses, False Representation or Actual Fraud - 11 U.S.C. § 523(a)(2)(A))

84. Plaintiffs re-allege paragraphs 1 - 67 as though fully set forth herein.

85. The Notes described in Para. 45 above are valid debts.

86. Defendant, in soliciting loans from the Galapago Street Note Holders, and in drafting and executing the Notes, made false representations to the them that their loans would be secured by deeds of trust against the Galapago Street property.

87. Defendant intended that the Galapago Street Note Holders would rely on his false representations that their loans would be secured.

88. The Galapago Street Note Holders relied on the Defendant's false representations in agreeing to make the loans on the terms described in the Notes.

89. The Galapago Street Note Holders' reliance on Defendant's false representations was reasonable.

90. Defendant, by falsely asserting that: (a) the funds loaned by the Galapago Street Note Holders would be used to remodel/rehabilitate the Galapago Street Property and/or by falsely asserting that (b) their Notes would be secured by deeds of trust against the Galapago Street property, intentionally engaged in a scheme to deprive or cheat the Plaintiffs of their property or a legal right, and accordingly committed actual fraud.

91. Defendant's false representations and/or commission of actual fraud against the Galapago Street Note Holders have caused them to sustain damages in an amount to be proven at trial.

**VI.**

**FOURTH CLAIM FOR RELIEF**

(Kalamath Street – False Pretenses, False Representation or Actual Fraud - 11 U.S.C. § 523(a)(2)(A))

92. Plaintiffs re-allege paragraphs 1 - 67 as though fully set forth herein.

93. The Notes described in Para. 52 above are valid debts.

94. Defendant, in soliciting loans from the Kalamath Street Note Holders, and in drafting and executing the Notes, made false representations to them that their loans would be secured by deeds of trust against the Kalamath Street property.

95. Defendant intended that the Note Holders would rely on his false representations that their loans would be secured.

96. The Kalamath Street Note Holders relied on the Defendant's false representations in agreeing to make the loans on the terms described in the Notes.

97. The Kalamath Street Note Holders' reliance on Defendant's false representations was reasonable.

98. Defendant, by falsely asserting that: (a) the funds loaned by the Kalamath Street Note Holders would be used as a short term "bridge" loan until he secured conventional financing; and/or by false asserting that (b) their Notes would be secured by deeds of trust against the Kalamath Street property, intentionally engaged in a scheme to deprive or cheat the Plaintiffs of their property or a legal right, and accordingly committed actual fraud.

99. Defendant's false representations and/or commission of actual fraud against the Kalamath Street Note Holders have caused them to sustain damages in an amount to be proven at trial.

VII.

**FIFTH CLAIM FOR RELIEF**
(S. Ulster Street – False Pretenses, False Representation or Actual Fraud - 11 U.S.C. § 523(a)(2)(A))

100. Plaintiffs re-allege paragraphs 1 - 67 as though fully set forth herein.

101. The Notes described in Para. 63 above are valid debts.

102. Defendant, in soliciting loans from the S. Ulster Street Note Holders, and in drafting and executing the Notes, made false representations to the them that their loans would be secured.

103. Defendant intended that the S. Ulster Street Note Holders would rely on his false representations that: (a) he owned the S. Ulster Street Property; and/or (b) that their loans would be secured against the S. Ulster Street property; and/or (c) that their loans would be repaid when S. Ulster Street was sold.

104. The S. Ulster Street Note Holders relied on the Defendant's false representations in agreeing to make the loans on the terms described in the Notes.

105. The S. Ulster Street Note Holders' reliance on Defendant's false representations was reasonable.

106. Defendant, by falsely asserting that: (a) he owned the S. Ulster Street property and/or (b) the funds loaned by the Note Holders would be used to remodel/rehabilitate the S. Ulster Street Property; and/or by false asserting that (c) their Notes would be secured by deeds of trust against the S. Ulster Street property; and/or (d) falsely asserting that the Note Holders would be repaid when S. Ulster Street was sold, intentionally engaged in a scheme to deprive or cheat the Plaintiffs of their property or a legal right, and accordingly committed actual fraud.

107. Defendant's false representations and/or commission of actual fraud against the S. Ulster Street Note Holders have caused them to sustain damages in an amount to be proven at trial.

## VIII.

## SIXTH CLAIM FOR RELIEF
(On Behalf of all Note Holders – Against Defendant for Willful and Malicious Injury - 11 U.S.C. § 523(a)(6))

108. Plaintiffs re-allege paragraphs 1 – 107 as though fully set forth herein.

109. Defendant's scheme to defraud the Plaintiffs, which spanned many years, involved several "properties" that he falsely asserted were pledged as collateral for the loans, and Defendant's many false representations, which caused a principal loss alone to the Note Holders of almost $1,000,000 was intentional.

110. Defendant's scheme was implemented with the intent to cause harm to the Note Holders.

111. Defendant's scheme did in fact damage the Note Holders.

112. The Note Holders' injuries were the proximate result of Defendant's actions.

## IX.

## SEVENTH CLAIM FOR RELIEF
(On Behalf of all Note Holders – Against Defendant for Civil Theft -  C.R.S. § 18-4-405

113. Plaintiffs re-allege paragraphs 1 - 112 as though fully set forth herein.

114. Defendant's scheme, as described hereinabove, violates Colorado's Civil Theft Statute, which provides, in relevant part, that "the owner may recover …three times the amount of the actual damages sustained by him … and may also recover costs of the action and reasonable attorney fees…"

115. The Note Holders as victims of Defendant's thefts, are entitled to the remedies set forth in Para. 114 above.

11

## X.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court: (1) determine that the Debtor is liable for the debts owed to the Note Holders because such debts were incurred through the Debtor's fraud; (2) that such debts are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A); and/or (3) that such debts are nondischargeable pursuant to 11 U.S.C. § 523(a)(6); (4) that Defendant's conduct constitutes Civil Theft under C.R.S. § 18-4-405; (5) to award the Note Holders treble damages, attorney's fees and costs; and (6) for such further and additional relief as the Court deems proper and just.

Date: November 18, 2024

Respectfully submitted,

***GOFF & GOFF, LLC***

*s/Lance J. Goff*

_____
Lance J. Goff, #27301
GOFF & GOFF, LLC
6800 N. 79th St., Ste. 206
Niwot, CO 80503
Telephone: (720) 866 – 8261
E-Mail: lance@goff-law.com
*Attorney for Plaintiffs*